of the day, I'll turn it over to Judge Reyna who wants to make a motion. Thank you, Judge Moore. Colleagues, I'd like to move for admission one of my law clerks, Vladimir Semendaye. And Vlad, could you please stand up? Well, it's been a great year having you clerking for me and time has flown by. I guess it's because you're having fun and I'm having fun, but we're all both working hard. When you're working hard, it even goes by faster. You've impressed me with your hard work and your work ethic, which has produced excellent work product. And that product has enhanced not only my work, but the work of the court as a whole. I remember not too long ago that we celebrated, you're becoming an American citizen. You're an exemplar of what this country stands for in immigrants coming to the United States and excelling. Taking advantage of opportunities, working hard, and adhering to good ethics. Colleagues, I know that in the well stands a young man who is an excellent lawyer and that I'm sure will be a leading light in the legal profession. I move for his admission to the US Court of Appeals for the Federal Circuit. Wow, those were some very kind words. What are you doing over there? I was inappropriately consulting with him about whether we really shouldn't accept this motion or not. I had some important questions to flush out. They're flushed out. What do you think, Judge Chen? I've also been impressed with Mr. Vlaad here, and so I approve the motion. I agree, and I'd like to ask the clerk of court. I don't know how to say a lot, but I'll say spasibo for your service here to the court. That's what I was asking. I was saying, does he speak Russian? Before I try and blutter something out in Russian, I figured I should make sure you speak it. Not that you understand what I said anyway, but okay. Let's have you sworn in. You solemnly serve, firmly looking for yourself as an attorney and counselor to the Supreme Court of the United States of America. Congratulations and welcome to the United States Court of Appeals for the Federal Circuit. All right, our first case for today is In re FSA number 2018-2069. Mr. Briner, please proceed. Good morning, and may it please the court. My name is Bill Briner. I'm with the law firm of Kilpatrick, Townsend, and Stockton in Winston-Salem, North Carolina. I'm here representing the appellant, FCA US LLC. This is an appeal that arises from the affirmance by the Trademark Trial and Appeal Board of a trademark examining attorney's refusal of FCA's application to register the mark Moab in connection with passenger automobiles, structural parts, trim, and badges based on a prior registered mark owned by Moab Industries LLC for the mark Moab Industries for automotive conversion services, specifically installing specialty automotive equipment. That affirmance by the board and the refusal by the trademark examining attorney came following district court litigation to trial and to a final judgment in the United States District Court for the District of Arizona between FCA and Moab Industries LLC regarding the marks at issue here. If this court affirms the Trademark Trial and Appeal Board's ruling, we will have a circumstance in which two Article III courts will have reached exactly opposite conclusions about whether a likelihood of confusion arises. On different facts and after different hearings, correct? The Trademark Board's not an Article III court, right? Correct. Okay. It is not. That was an easier question than mine, so you'll get back to mine after you're finished with this. Sure, certainly. But this court is. If this court were to affirm the board, we would have that circumstance. I'm glad we agree that the PTAB and the panels are not Article III courts. Yes. Judge Moore, to your question, the cases are far more similar than they are different. But can't two different triers of fact hearing witnesses, maybe you're more compelling on one day than another? Can't two different triers of fact reach different conclusions when even hearing the same witness? But certainly when they're hearing different testimony in different settings, can't they reach different conclusions? Different triers of fact can. To be clear, this is an ex parte appeal where there were not witnesses. There was evidence adduced to the board by the trademark examining attorney. There was a far greater volume of evidence adduced to the district court, and the district court recognized that. It said and was aware that an office action had issued on the application and that the application by FCA had been suspended, but was clear that that was not going to be given great weight in his analysis because of the greater volume of evidence that the district court would hear. You're saying that the marks are the same. Is that really the case? My understanding in the district court litigation, the asserted mark was the word Moab in conjunction with Jeep or Wrangler. And here, your applied for mark is just Moab in isolation. The applied for mark here is Moab in isolation. In the district court, the district court analyzed marketplace usage of the mark by both parties, which is entirely appropriate. And even the examining attorney had used some evidence of the ways in which the marks were used in the marketplace. My understanding is the trademark board saw that there wasn't an identity of issues between what was in front of the agency and what was in front of the District of Arizona because the marks were different. The mark here in your application is just Moab. The mark there debated in Arizona was Moab in conjunction with the word Jeep or Wrangler. And so for that reason, we couldn't necessarily conclude that the marks were identical. Is that an incorrect understanding of what was going on in the district court? Certainly Jeep and Wrangler formed part of the usages that the district court assessed. But the district court's likelihood of confusion analysis focused on the two words Moab and Moab Industries. That was the nature of the claims that gave rise to the infringement assessment. Determined, for instance, that the Moab mark was not particularly commercially strong in that instance. And although there were other usages and a marketplace context for the district court to evaluate, its assessment was about infringement or not arising out of FCA's use of the word Moab. At the board level, that is a similar focus. That didn't come out clear for me. Are you saying that the district court did not consider the word Jeep or Wrangler in conjunction with the word Moab when it was trying to figure out whether there was a likelihood of confusion between Moab Industries and your usage of the term Moab? Evidence of Jeep and Wrangler being present in the way FCA was using the word Moab was certainly before the district court. Right, and so the district court considered those additional words in trying to assess whether or not there was a likelihood of confusion. Am I wrong about that? No, you're not wrong about that. It did consider those things. I don't think that was dispositive of its assessment, but it did consider that broader context. And DuPont is clear as well that the assessment, even at the registrability level, bears at least in part on how the mark is used in reference to when used in connection with the goods or services involved. And counsels against a mental exercise, but instead an assessment of the marketplace circumstances in which the parties' respective marks may appear in the marketplace. So the district court's analysis is not terribly far afield from the kind of assessment that DuPont asked the board to make. And I think part of the error, in my view, in the board's assessment here is its unwillingness to recognize the similarities, and the great degree of similarity in our view, between what the district court was evaluating and what the board is to evaluate in registrability. It would be true if the TTAB had ignored entirely the district court proceeding, but it didn't ignore it. It considered it and determined that it was a different proceeding altogether. It did consider it. It did come to an opposite conclusion from the district court. Isn't that conclusion, don't we review that conclusion by reviewing whether it's supported by substantial evidence? Yes, on the facts, you may do that. Of course, the likelihood of confusion standard in this circuit is a question of law, and you can review that matter of law de novo, but the underlying facts would need to be supported by substantial evidence at the board level. So why don't you move away from the idea that the TTAB is somehow constrained by the district court because it's not, and as Jadrina said, it properly considered it, but it came to a different conclusion. So why don't you tell us whether you think that conclusion is flawed either as a matter of law or if some of the facts are not supported by substantial evidence. Why don't you get to the merits of why you think we should reverse this case? Sure. So, for instance, we view the board's ruling on certain of the DuPont factors as not having been fully considered. For example, the sophistication of customers. The district court engaged in a fairly extensive analysis of that. The board said, we just need to extrapolate to how sophisticated the purchasers of the most inexpensive subcompact car would be without reducing evidence of what level of care someone buying a subcompact car, for example, would evaluate. The district court viewed the trade channels of the parties' respective marks as being quite different. Without evidence, the board said that the owner of the cited registration is itself a trade channel for the kind of structural parts that are identified in FCA's application. There was no evidence underlying that, and the district court fleshed out the degree to which the trade channels differ. You concede that the marks Moab and Moab Industries are pretty similar? There is a similarity there. There's no question, and the district court recognized that. And what about the relatedness of the goods for Moab and Moab Industries? Certainly. Pretty similar, right? Moab sells, or FCA sells goods, or has applied to register for goods under the Moab mark, passenger vehicles. Moab Industries sells services, automotive conversion services. There may be some relatedness there, and the district court recognized that as well. Can we talk about what the TTAB said instead of what the district court said? We're here reviewing the trademark boards, I understand. That's right. And the board found that there is some degree of relatedness to those goods and services in that context. Again, I think it relied in fair part without evidence on the notion that the owner of the cited registration is itself a trade channel for structural parts for automobiles. I don't think there's evidence to support that particular aspect of the relatedness. But the similarities in the marks and the similarities in the goods shouldn't be dispositive when there are other factors and other evidence to consider, which the board did do some of that. We think there's some flaws to that assessment. The district court certainly did that in coming to its different conclusion about whether there was a likelihood of confusion arising from the various marks. And we certainly think that at minimum the 13th DuPont factor, the catch-all, permits the board to assess and evaluate the district court's opinion. And we think it simply did not give sufficient weight to that conclusion after a full evidentiary hearing between these parties about the marks in question, the goods in question, the trade channels in question, the sophisticated nature of the purchasers in question, whether there was any likelihood or actual confusion. All of the kinds of factors that DuPont lays out that the district court assessed in its infringement assessment at trial. And we think that merits a reversal. And we'll be happy to take further questions in my rebuttal time. Okay, thank you very much, Mr. Briner. We'll save the remaining time for rebuttal. Ms. Heber, please proceed. Good morning, and may it please the court. The board did exactly what it was supposed to do here. It looked at the application and the cited registration. It considered the marks and the scope of the usages disclosed in them. It pointed to substantial evidence in the record for all of its findings on the relevant DuPont factors.  As part of that analysis, it addressed the district court's decision. It found that the district court had decided materially different facts, a different likelihood of confusion question than it had to decide because of the difference in FCA's mark and the scope of the usages and the trade channels and the customers that the TTA had to look at. So it's a position that had the district court considered the same facts or identical facts, then perhaps the district court decision would be controlling. No, I don't. I think it would be certainly more relevant in that the board would have to look at the district court and if we're talking the exact same facts, evidence, the exact same mark, it would have to explain why it wouldn't be finding the same way. I think in that instance it would be more of a comedy kind of thing. You don't think B&B hardware would require preclusion to apply? B&B hardware doesn't require preclusion to apply unless the usages are materially the same. And preclusion, again, if we're talking issue preclusion, would also have to require that the PTO was a party. And so I think what's more appropriate here is what this court said in power integrations, which was a patent case in a reexamination context where there was a claim construction issue about the term coupled. And in that case, the party to the reexam had argued to the district court one meeting and they argued to the board that, look, the district courts claim construction. This is what you should follow, board. The board in that case didn't address it at all. And this court remanded for the board to consider it. And so I think it's more that situation that if generally there in power integrations, this court held that generally the board's not bound by prior district court determinations. But in circumstances where the applicant has argued the court's finding, the board has... It's a different claim construction rubric, though, that the agency uses compared to district courts. And so it's not exactly identical. And here it's not exactly identical either, right? Because FCA's mark in the application is no... Right. The hypothetical is what if the facts are identical? If it is the exact same mark and usages, I would suspect that the board would find the same way. But it's not under a theory that it's bound to. I think it's because it would be the evidence before the board. And the board is certainly free to say, yeah, I agree with it. Your brief didn't respond to the blue brief's citations to Mother's Restaurant. Could you help us out understand why Mother's Restaurant doesn't say something to the contrary? Mother's Restaurant doesn't say something to the contrary. And I think our brief addressed what Mother's Restaurant says. Without citing it. But it did not exactly cite that case. At all. I understand Your Honor's point. Mother's Restaurant involved a situation where the trademark licensee of the owner... I believe it was a state court proceeding, but the licensee was. And there the mark owner's interests were deemed to have been kind of virtually represented by the licensee in that prior case. That's not what we have here. There's no world in which the PTO's interests are virtually represented by a prior litigant. And this court held as much in Trans-Texas Holdings that the PTO is not the same as a private litigant. And so that would be why Mother's Restaurant doesn't apply. PTO is acting in the public interest in assessing registrability under its statutory mandate to determine if marks are eligible for registration. And in light of the presumptions that an issued registration has to be afforded under Section 7B. The court has no further questions. I would simply close with saying that there's substantial evidence in the record to support each of the board's findings. FCA has not pointed to error in any of them. On the trade channels question, the board, and in our brief we point out that the board in fact cited two record evidence that showed that MI itself and conversion shops in general are a trade channel for structural parts of this nature. That finding is correct. So are the other findings. And we would ask this court to affirm. Thank you, Ms. Eber. Mr. Reiner, you have your rebuttal time. Certainly. And I do, I want to get to Judge Chen, your point about Mother's Restaurant. Because the office and registrants, registrants in trademark infringement litigation, both seek to serve the public interest. Registrants often rely on, trademark litigation plaintiffs often cite that the public interest is also involved in as a party. I don't see where there is a greater interest from the office than there is from Moab Industries in vindicating Moab Industries' rights. The two, and often, and this court's cases and board cases recite this frequently, that if there is doubt, the doubt goes in a likelihood of confusion instance. The doubt is resolved in favor of the senior registrant. Those interests are highly aligned with one another. And the office until today made virtually no effort in its briefing to distinguish those interests. I think Mother's Restaurant supports the notion. Let's talk about trans-Texas holdings. Trans-Texas holdings makes it pretty clear that the agency, if it wasn't a party to that other district court litigation that did a claim construction, the agency, having not been a party, isn't bound by that claim construction. Yes, that is its holding. There is no, at least as I understand the office's position, there isn't a mechanism by which the trademark office can then be made a party in order to be bound by litigation. So the position, I believe, from the office is there is no set of circumstances under which the office is bound by issue preclusion principles. And that just seems counterintuitive to me in many respects. And doesn't seem to be bolstered by the notions that Mother's Restaurant, for example, put forward. Subject to further questions from the court, we appreciate the court's time this morning. We thank both counsel for their argument. The case is taken under submission.